**In re Godoy GLAD, a/k/a Dr. Godoy Glad, D.C., Debtor.**

**Godoy GLAD, a/k/a Dr. Godoy Glad, D.C., Plaintiff/Appellee,**

v.

**Dempsey MORK, Defendant/Appellant.**

BAP No. CC 88–1315 MoMeJ.
Bankruptcy No. LA 82–22447–WL.
Adv. No. LA 86–2430–WL.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Nov. 17, 1988.

Decided March 9, 1989.

Kenneth J. Schwartz, Schwartz & Wilton, Encino, Cal., for defendant/appellant.

Diane Weil, Danning, Gill, Gould, Diamond & Spector, Los Angeles, Cal., for plaintiff/appellee.

Before MOOREMAN, MEYERS and JONES, Bankruptcy Judges.

OPINION

MOOREMAN, Bankruptcy Judge:

By this appeal the appellant seeks to set aside the bankruptcy court's order requiring him to return to the debtor's estate, a 1975 Excalibur automobile, or in the alternative, the sum of $25,000.00.

FACTS

The essential facts to the instant appeal are as follows. In late 1982, the appellee Mr. Glad (debtor), received a letter from the appellant (Mork),[1] essentially represent-

---

1. It appears from the record that the letter sent to the debtor had not been solicited by the debtor. There is also some indication in the record that Mork, although not an attorney, was in some way associated with an entity called Business Recovery Services.

ing that Mork could help the debtor with the debtor's "tax problems." [2] In response to this letter, the debtor made an appointment to meet with Mork at Mork's "offices." Mork represented to the debtor that he would assist the debtor in resolving the problems with the IRS, which included the possibility of filing a Chapter 11 bankruptcy petition. Certain "information sheets" were provided to the debtor in order to obtain the necessary financial data for purposes of filing the Chapter 11 petition. In exchange for the services to be rendered, the debtor transferred a "gemstone" with an approximate value of $35,000 and a 1975 Excalibur automobile with an approximate value of $25,000.

Although Mork himself was not a licensed attorney, he apparently hired Albert Sheppard to appear as attorney of record on the debtor's bankruptcy petition and represent the debtor at the § 341 meeting. Eventually, the debtor "fired" Mork and Mr. Sheppard for their failure to adequately oversee his Chapter 11 case. The debtor also sought the return of the "gemstone and Excalibur." Mork returned the gemstone, but not the Excalibur.

Eventually, after retaining "new counsel" the resulting adversary proceeding ensued, wherein the debtor sought the return of the Excalibur on numerous grounds including *inter alia* fraud and recision. After a trial on the matter, the bankruptcy court entered an order in favor of the debtor and requiring Mork to return the Excalibur or in the alternative $25,000.

The bankruptcy court determined that, "Mork undertook to provide Debtor ... with legal services generally provided by attorneys in Chapter 11 proceedings." Additionally, the bankruptcy court found that the services provided by Mork and Shep-

pard "were inadequate and were in fact detrimental to the debtor." Finally, the bankruptcy court determined that Mork had failed to comply with 11 U.S.C. § 329(a), which requires the filing of a statement of the compensation paid.[3]

## DISCUSSION

The only dispute in the instant appeal is whether the record supports the bankruptcy court's determination that Mork provided "legal services" to the debtor, thereby making him subject to the requirements of § 329. It is undisputed that a non-attorney will be subject to the requirements of § 329 if he engages in rendering "legal services" to the debtor. *In re Telford,* 36 B.R. 92, 94 (9th Cir.BAP 1984).

In addressing the issue of what action constitutes the practice of law, Judge Malugen set forth the recognized rule in California that:

'as the term is generally understood, the practice of law ... includes *legal advice and counsel* and the *preparation of legal instruments* and contracts by which legal rights are secured although such matter may or may not be pending in a court.' [citations omitted].

*In re Anderson,* 79 B.R. 482, 484 (Bankr.S. D.Cal.1987) (quoting *People v. Sipper,* 61 Cal.App.2d Supp. 844, 846, 142 P.2d 960 (1943)). In *Anderson,* the bankruptcy court determined that the non-lawyer had rendered legal services, without complying with § 329, by interviewing and soliciting information from the debtor as well as preparing the bankruptcy schedules. *Anderson,* 79 B.R. at 485.

In the instant case the appellant argues that the record does not support a finding that he engaged in the type of conduct as

**2.** The record indicates that the Internal Revenue Service was attempting to collect unpaid income and withholding taxes from the debtor.

**3.** Although the initial complaint had been based on certain state law claims, § 548 and § 542 "turnover," these claims were apparently unavailing because of the underlying statute of limitations periods and because the bankruptcy court determined that there had not yet been a showing of insolvency for purposes of § 548.

Although § 329 was not set forth in the original complaint as a basis for recovering the Excalibur, the bankruptcy court gave both parties an opportunity to brief the application of § 329 in post-trial briefs and allowed Mork's attorney an opportunity to "reopen" the proceeding to introduce Mork's own testimony if desired. See also note 6.

set forth in the *Anderson* case. Although in this appeal there are no specific written findings as to what actual legal services Mork had engaged in, the record does clearly support the following facts.

Mork represented to the debtor that he could assist the debtor in overcoming the debtor's tax problems.[4] In response, the debtor discussed with Mork his financial condition for the specific purpose of forestalling the IRS' collection attempts. Mork gave the debtor specific advice with regard to filing a Chapter 11 petition and represented that Mork's office would assist the debtor. Mork provided the debtor with certain financial "information sheets" for the purpose of preparing the Chapter 11 petitions. The uncontradicted testimony also suggests that Mork's offices prepared the debtor's schedules and hired Mr. Sheppard to sign the petition and represent the debtor at the § 341 meeting.[5] All the above evidence was uncontradicted by Mork.[6]

Although the appellant's brief alleges that the debtor's bookkeeper actually prepared the bankruptcy schedules, the bankruptcy court's finding to the contrary (see note 5), will not be reversed unless clearly erroneous. Bankruptcy Rule 8013. On the record before this Panel the evidence supports the court's finding.

In view of the above undisputed evidence in the record before this Panel, there is sufficient basis for affirming the bankruptcy court's determination that Mork was subject to § 329 because he had provided *legal services* to the debtor. As in the *Anderson* case, Mork interviewed and solicited information from the debtor with regard to his financial status. Based on this information, Mork advised the debtor to file a Chapter 11 bankruptcy petition and assisted the debtor in preparation of the bankruptcy schedules. *See Anderson,* 79 B.R. at 485. Additionally, the above evidence would support a conclusion that Mork was engaged in "the practice of law" under California law and as defined by the *Sipper,* case. *Sipper,* 61 Cal.App.2d at 846, 142 P.2d 960 ("the term practice of law ... includes *legal advice and counsel* and *preparation of legal instruments....*") (emphasis added).

The only dispute on appeal is whether Mork had provided legal services to the debtor.[7] Given the state of the record as outlined above, the bankruptcy court's conclusion that Mork had rendered legal services to the debtor is AFFIRMED.

4. The debtor testified that he believed that Mork was an attorney and did not discover otherwise until after the § 341 meeting.

5. Sheppard was apparently paid $750 to appear on behalf of the debtor at the § 341 meeting. Although there is no clear evidence as to who paid Sheppard the $750, the debtor specifically testified that he had not done so. When Mork was notified of the debtor's dissatisfaction with Sheppard's performance, Mork apparently told the debtor that he would "assign another guy to [the debtor's] case."

Although the bankruptcy court made a general written finding that Mork had provided "legal services," the court more specifically stated in the hearing on the matter,

what I think was probably pretty clear is that [Mork] got Mr. Sheppard and part of the whole deal was that Sheppard was going to take care of it and I assume since [Mork's office] *prepared the schedules* that they must have *paid Sheppard $750* out of the $60,000 that [Mork] received....

6. Although Mork was not present to testify as to what actual services he had performed on behalf of the debtor, the bankruptcy court gave Mork a clear opportunity to do so at a later date. Apparently, however, Mork decided against giving such testimony and alternatively brought the instant appeal to attack the bankruptcy court's findings.

7. The appellant does not dispute the trial court's finding that the services rendered were without value, thereby justifying the bankruptcy court's order requiring the return of the Excalibur or alternatively $25,000. *See* 11 U.S.C. § 329(b) (allowing for the recovery of excessive compensation).