**In re Zella M. HERREN, Debtor.**

**Bankruptcy No. 91–01044–A.**

United States Bankruptcy Court, D. Wyoming.

April 9, 1992.

---

Paul Hunter, for U.S. Trustee.

Larry T. Ralls, Sr., for Wyoming Document Center.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HAROLD L. MAI, Bankruptcy Judge.

THIS MATTER came before the court on March 11, 1992, for hearing on the United States Trustee's Objection to Fee paid to an entity called Wyoming Document Center.

The court having considered the Motion, the statements and arguments of counsel and of Mr. Ralls, the exhibits, and being fully advised upon its own review of the applicable statutes and authorities, does hereby find and conclude as follows:

### FINDINGS OF FACT

1. Wyoming Document Center is a business located in Lander, Wyoming. Mr. Larry T. Ralls, Sr., is the President and General Manager of the business. At the bottom of the Document Center's stationery is the following statement: "Owned and Operated by Big Sky Investments, Inc.—Lander, Wyoming."

2. Mr. Ralls is not an attorney and is not licenced to practice law in the State of Wyoming.

3. The business of the Document Center is to prepare legal documents. In order to obtain clients, it advertises its services.

4. The Document Center provides potential clients with a document entitled "YOUR RIGHTS AS A CITIZEN." This document advises the client as follows:

\* \* \* A highly paid army of persuaders surround us with thousands of seductive messages each day that all say "buy, buy, buy". Credit that is readily available makes living beyond our means tempting as well as being difficult to resist the siren sounds of the advertiser. We are also told that if we fail to pay for it right on time, we are miserable deadbeats. \* \* \*
God forsake, if for some just reason, such as illness, loss of work, a bad marriage, or just plain bad planning, our ability to pay for the goods or services we need is interrupted. If this should happen our first feelings are fear and guilt. We may even feel that we have fundamentally failed as human beings.

Nonsense, there is more to life than an A+ credit rating and lots of better things to feel guilty about than the failure to pay for a snowmobile or a summer vacation right on time. The importance of families, friends, and neighbors should never be forgotten as well as the fact that the American economy is based on consumer debt. In the age of the 50 billion dollar bailout for poorly managed financial institutions, you really shouldn't feel too guilt ridden about the debts you have acquired. *Remember that large creditors expect defaults and Bankruptcies and treat them as a cost of doing business.* The reason there are so many credit card companies is because it is a very profitable business even with so many Bankruptcies.
Fortunately for at least two dozen centuries it has been recognized that debts can get the better of even the most conscientious among us. From Old Testament times to the present, some societies have discouraged debtors from falling on their swords and providing sensible ways for debt oppressed people to start new economic lives. In the United States this is done through Bankruptcy. Bankruptcy is a truly worthy part of our legal system based on it being a forgiveness rather than a retribution. *Certainly it helps to keep families together, reduces suicides, and keeps the ranks of the homeless from growing even larger.*
If you suddenly find yourself without a job, socked with high unexpected medical bills that you can't pay, or are simply snowed under by an impossible debt burden, *Bankruptcy provides a chance for a "FRESH START" and a renewed positive outlook on life for you and your family.*

(emphasis added.)

5. The clients also receive the following letter headlined "FRESH START PROGRAM":

Dear Future Prospect:

We're glad you made the right decision to call upon us for help. I want to let you know you are on the way to being *debt-free.* Filing Bankruptcy is a very serious matter. By answering our advertisement you probably have your back up to the wall with no other alternative. Believe me, you are not alone; millions of people in the same situation as you file every year. It's nothing to be ashamed of. *Just think—after your Bankruptcy has been discharged by Federal Court, you will be absolutely debt-free, except for normal living expenses.* This is a *Fresh Start Program* where you can forget about the past, and look forward to a bright new future. As we stated before, Bankruptcy is a serious matter; it has to be done with perfection *and has to be immaculate before a Federal Court will accept it.* Lawyers are a vital part of our legal process, but even if you had the large fee they require, you are not required by Federal or State law to have an attorney represent you in a Bankruptcy proceeding. But we feel you do need professional help in preparing your documents to proceed in a professional manner.
Wyoming Document Center will prepare these documents for you. *We will not leave your side in preparing the current documents which are required by Federal law.* The following page will tell you how we proceed after your de-

cide to use our services. Read all the material carefully, *and please don't delay ... your debt problem will not go away* (you know that already), *unless you act NOW.*

If you have any further questions, please feel free to call us at * * *. *"Secure a bright future—you deserve it!"* (emphasis added.)

6. In exchange for a $50 deposit, the client receives a packet containing forms asking for information needed to complete the schedules and petition and also a one-page explanation of bankruptcy law entitled "The Bankruptcy Procedure."

7. The Bankruptcy Procedure explanation contains a brief explanation of the automatic stay and lists some exceptions to it, and a brief explanation of the ordinary 341 Meeting. It also contains the following statements:

Within 120 to 150 days after your petition is filed, your bankruptcy will be finalized.

We hope this letter answers some of your questions and gives you a general understanding of bankruptcy. Once again, we thank you for choosing our company to assist you in preparing your documents for your bankruptcy and we look forward to helping you get *A FRESH START.*

8. The forms in the packet are accompanied by a two-page "Definitions of Schedules" that explains what items are to be included on each of the official schedules. Under the category of "Real Property" it advises the client that such "land and things permanently attached to it, includes more than just a house." The list of examples following this explanation is extensive, but it does not include mineral interests.

9. Under the heading of creditors holding unsecured non-priority claims, the form advises:

In this schedule, list all creditors you haven't listed in Schedules D or F. *For purposes of completing Schedule F, it doesn't matter of (sic) the debt might be back child support, a tax delinquency or a student loan.* It also doesn't matter if you believe that you don't owe the debt. It's essential that you list every creditor to whom you owe, or possibly owe, money. If you want to repay a particular creditor, list the debt and get it discharged anyway. You can always voluntarily pay the debt out of property on income you receive after you file for bankruptcy, even though the creditor is legally barred from trying to collect the debt.

(emphasis added.)

10. Under "creditors holding secured claims" the Definitions of Schedules includes seven (7) examples.

11. Under "executory contracts and unexpired leases," the Definitions of Schedules advises the client that " 'executory' means the contract is still in force—somebody is still obligated to do something under it." Under the nine (9) examples of executory contracts and unexpired leases, the Definition of Schedules does not list a Contract for Deed under Wyoming law.

12. Under the heading "property claimed as exempt," the Definitions of Schedules directs: "Refer to Wyoming Exemption, (light blue piece of paper supplied)." This Blue Sheet is a one-page form titled "Wyoming" and lists types of assets, the exemption, the section or sections of the Wyoming Statutes upon which the exemption is based, and "notes." The notes inform the client, among other things, that in regards to a homestead, he or she "[m]ust occupy when file for bankruptcy."

13. The Blue Sheet lists motor vehicles only under the asset heading "tools of trade." The Blue Sheet does not inform clients that they may currently claim a $2,000 exemption in a motor vehicle without reference to its use in a trade or business.

14. The Definitions of Schedules specifically directs the client "Do not fill out this page" in reference to the Summary of Schedules.

15. The client also receives a document entitled "ROUTINE BANKRUPTCY PROCEDURE," that advises:

After the Federal Court has received your prepared paper work, these are the steps in order 1–8.

1. The court notifies creditors of your Bankruptcy filing.
2. The court appoints a trustee.
3. The court sets a date for the meeting of creditors.
4. You attend the meeting of creditors.
5. You and the trustee deal with your non-exempt property.
6. You deal with secured property.
7. *The court grants your discharge.*
8. *Your case is closed.*

WHEN IT HAPPENS

1. As soon as you file your papers.
2. Within a week or two after you file.
3. Shortly after you file.
4. 20–40 days after you file. (Bankruptcy rule 2003; however, in many districts, the meetings are routinely held 45–90 days after you file).
5. Shortly after the meetings of creditors.
6. Within 45 days of the date you file the Statement of Intention. (It is usually filed with your initial papers).
7. . *Three to six months after you file.*
8. *A few days or weeks after the discharge.*

And now finally *you have a "FRESH START" in life,* and you will probably be able to get a much needed nights sleep. (emphasis added.)

16. Zella M. Herren is a client of the Document Center. She paid the Document Center between $240 and $300 for their services.[1]

17. On August 23, 1991, Ms. Herren and Big Sky Investments executed the following contract styled "Legal Document Fees and Conditions":

This will confirm the agreement entered into this 23rd day of August, 1991, by and between Zella M. Herren hereinafter referred to as, **Client** and **BIG SKY IN-**

**VESTMENTS, INC.** hereinafter referred to as **"Legal Technician"** for a fee has agreed to assist **Client** in preparing a legal document concerning Bankruptcy Chapter 7.

Legal Technicians are only preparing the documents with the exact information provided by the Client.

*Z.M.H.* The fee for this service is set at $275.00 plus any court or filing fees. This fee must be paid in full before the said documents are sent to the proper authorities. All fees are nonrefundable.

*Z.M.H.* It is understood that **BIG SKY INVESTMENTS, INC.,** any employee, or anyone directly connected with said corporation, **does not** give any legal advice whatsoever.

*Z.M.H.* It is fully understood by Zella M. Herren that **BIG SKY INVESTMENTS, INC.,** any employee or any one directly connected with said corporation, has not had any legal training, law school degrees, or any official training in the law. **WE ARE NOT ATTORNEYS.**

*Z.M.H.* **BIG SKY INVESTMENTS, INC.,** any employee, or anone (sic) directly connected with said corporation, WILL NOT go to court or represent client in any way.

*Z.M.H.* I, Zella Herren, understand this Binding Agreement and have received a copy.

18. Ms. Herren's name, the date, and the fee amount are handwritten in on this fee agreement. In addition, next to each of the above indented paragraphs is a line where Mrs. Herren placed her initials, Z.M.H.

19. On November 21, 1991, Ms. Herren filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code with the petition and schedules prepared by the Document Center.

20. The schedules and statements prepared for Ms. Herren by the Document Center consists of 33 pages of pre-printed

---

1. The exact amount is not clear because the fee agreement lists the amount as $274 plus any filing fees and the signed "Statement of Assistance by non-attorney in Regards to Filing This Petition" lists the amount as $300.

forms. Of these, 17 pages contain only such minimal typed information as "x"s placed in a box, the symbol "N/A", the debtor's name, social security number, and date.

21. Ms. Herren had previously filed a voluntary Chapter 7 petition on February 4, 1991, and received her discharge on May 7, 1991. On October 22, 1991, the trustee of her first Chapter 7 case filed a complaint to revoke Mrs. Herren's discharge due to a dispute over her income tax refund.

22. Mr. Ralls stated that on August 26, 1991, Big Sky Investments refunded $120 to Ms. Herren and, on November 15, 1991, it refunded an additional $120.

23. Mr. Ralls empathetically denies that he or his company has ever provided clients with legal advice or engaged in the practice of law.

24. Mr. Ralls specifically denies that he gave Ms. Herren legal advice. He does admit that she informed him of her prior filing, but asserts that he didn't advise her regarding the second filing.

25. Mr. Ralls represents that the Document Center's expenses for advertising, office overhead, and paperwork, result in a profit of $40 out of each $300 fee.

26. After Ms. Herren filed her second Chapter 7 petition, Mr. Ralls sent letters to both the Office of the United States Trustee and to Ms. Herren's Chapter 7 trustee asserting that he did not represent her and never had.

## CONCLUSIONS OF LAW

■ This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This Objection to Fee is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O).

Despite the vehement disclaimers and the repetitive initialing of the fee contract provisions, the exhibits unquestionably establish that the Wyoming Document Center and its manager Big Sky Investments, Inc., are engaged in the unauthorized practice of law.

It is an unauthorized practice of law to prepare legal instruments by which legal rights are secured. See *State ex rel. Wyoming State Bar v. Hardy,* 61 Wyo. 172, 156 P.2d 309 (1945). A bankruptcy petition, and the accompanying Statement of Affairs and Schedules, including the schedule of property claimed as exempt, are indisputably legal instruments by which legal rights are secured.

■ Providing copies of the Official Forms necessary to filing a petition for bankruptcy relief is a legitimate and necessary service to the public. Similarly, a typing service that consists of *solely* transcribing written information furnished by clients is a service that may be legitimately provided by non-attorneys. *In re Bachmann,* 113 B.R. 769, 774 (Bankr.S.D.Fla. 1990). Even the "sale of printed material purporting to explain bankruptcy practice and procedure to the public" is permissible. *Id.*

Nonetheless, the respondent's conduct has far exceeded these acceptable practices. By its Definitions of Schedules, and attached Blue Sheet, respondent has impermissibly provided specific direction as to the correct way to fill out the forms, including what property to list where. "[Typing services] may not make inquiries nor answer questions as to the completion of particular bankruptcy forms nor schedules nor answer questions as to the completion of particular bankruptcy forms or schedules nor advise how to best fill out bankruptcy forms or schedules." *Id.*

"Actual preparation and direct or indirect filing for the debtor of Chapter 7 and Chapter 13 petitions, statements, schedules and Chapter 13 Plans" constitutes the unauthorized practice of law. *O'Connell v. David,* 35 B.R. 141, 143 (Bankr.E.D.Pa.1983) modified 35 B.R. 146 (E.D.Pa.1983) aff'd, 740 F.2d 958 (3rd Cir.1984).

■ The solicitation of financial information and preparation of schedules is rendering legal advice, whether provided by lay persons or lawyers. *In re Grimes,* 115 B.R. 639, 643 (Bankr.D.S.D.1990).

■ In connection with preparing legal documents such as the schedules, providing

clients with definitions of such legal terms of art as "creditors holding secured claims," "real property," "executory contracts," and the like is, by itself, giving legal advice.

Under the circumstances of this case, directing the client to "refer" to what appears to be a comprehensive list of Wyoming exemptions from which the client is to select assets is, by itself, the unauthorized practice of law. The only fair interpretation of the referral to the provided list is that the Document Center is advising the client of its opinion regarding available exemptions in Wyoming. It makes no difference whether the Document Center's proffered legal advice was correct (occupancy necessary for homestead) or incorrect (omission of retirement and vehicle exemption). Either way, it is still legal advice, complete with statutory references.

The exhibits in this case establish that the Document Center solicited business on the basis that it had a special expertise beyond that of a lay person ("it has to be done to perfection ... it has to be immaculate before a federal court will accept it ... we feel you do need professional help ... We will not leave your side in preparing the current documents which are required by law.").

■ Advising of available exemptions from which to chose, defining terms in the schedules, directing what property is appropriately listed in various areas, summarizing and reformulating the information solicited from clients, advising clients regarding responsibility to list all debts and the option of voluntary repayment and similar actions, all require exercise of legal judgment beyond the capacity and knowledge of lay persons. *In re Anderson,* 79 B.R. 482, 485 (Bankr.S.D.Cal.1987); *O'Connell v. David,* 35 B.R. at 144; *Bachmann,* 113 B.R. at 772–3.

■ Further, the court finds and concludes that the Document Center's exhortation to "please don't delay ... your debt problem will *not* go away ... unless you act NOW", is itself giving legal advice. The unmistakable and ordinary meaning of the "Dear future prospect letter" is (1) to advise that bankruptcy filing should not be delayed and (2) a representation that the client will thereby be rendered *"absolutely debt-free,* except for normal living expenses."

Such advice about the timing of an anticipated bankruptcy filing is a matter which requires legal expertise, since from that date flows numerous consequences including the dischargeability of certain debts such as student loans and taxes, entitlement to discharge, recoverability of preferences, and maximization of exemptions.

Similarly, while the written materials offer the advice, indeed the promise, that by filing proper documents the client will become "absolutely" debt-free, this legal advice about the consequences of filing is not tempered with the unfortunate truth that many financial troubles arise from non-dischargeable debts.

Further, read as a whole, and in the context of inclusion in the packet of forms, the "Routine Bankruptcy Procedure" document appears to advise the client what he or she can expect in their specific case and not just provide general information regarding bankruptcy law.[2] It appears to assure the client that he or she can expect a total "fresh start" and the case closed within three (3) to six (6) months. This completely ignores the possibility of litigation over the dischargeability of debts or other frequent complications.

■ Section 329(b) applies to all persons who render legal services to the debtor in connection with, or contemplation of bankruptcy, including lay persons as well as lawyers. *In re Grimes,* 115 B.R. 639, 649–50 (Bankr.D.S.D.1990); *Bachmann,* 113 B.R. at 775; *In re Glad,* 98 B.R. 976, 978 (9th Cir. BAP 1989) (solicitation of financial information used to prepare petition and schedules was "legal services" rendered by nonattorney); *In re Fleet,* 95 B.R. 319, 338

---

**2.** *E.g.,* It does not inform the clients that 341 Meetings are frequently continued to another date in which case the debtor will again be required to appear. See Fed.R.Bankr.P. 2003(e).

(E.D.Pa.1989) ("§ 329 provides court with alternative, plenary authority to regulate, enjoin, and impose monetary sanctions against lay persons as attorneys who bilk debtors in our court."); *In re Telford*, 36 B.R. 92, 94 (9th Cir. BAP 1984).

 The execution of a contract classifying or categorizing the services rendered as "legal scrivener," "legal technician," or some similar term, does not insulate the provider from liability under § 329 if, in fact, the services are legal services. See *In re Anderson*, 79 B.R. 482 (Bankr. S.D.Cal.1987). Similarly, a contract stating that the client understands that the services are not legal advice and are not provided by attorneys, does not insulate a lay person who engages in the actual unauthorized practice of law. *Id.*

 The actual typing involved in this case is minimal. In all cases in which a competent typist merely transcribes information filled out on official forms by the client, the time involved would be brief. If extra time by a nonattorney is spent correcting, summarizing, or reformulating information provided by a client, that time is spent on the unauthorized practice of law. *Bachmann*, 113 B.R. at 774. Such time spent in the unauthorized practice of law does not benefit a client.

Any business "overhead" for advertising that constitutes solicitation for the unauthorized practice of law is similarly not a service which benefits a "pro se" debtor.

In conclusion, it is clear that the respondent has engaged in the unauthorized practice of law. As such, it is subject to this court's jurisdiction under § 329 of the Bankruptcy Code to recover any fees paid. There is no evidence in this case that the respondent's services benefited the debtor or her creditors. In fact, just the opposite. This case will be dismissed because the debtor already has a pending Chapter 7 case. Therefore, the court ordered the entire fee returned, if it had not already been refunded. Additionally, the court advised the respondent that this court's policy is that fees paid in contemplation of bankruptcy for services that constitute the unauthorized practice of law must be re-turned to debtors. *O'Connell v. David,* 35 B.R. at 144.

The court will enter appropriate orders directing the return of the fees and the dismissal of this case.